IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Judge Wiley Y. Daniel**

Civil Action No.  05-cv-806-WYD-CBS

JESSICA WIEKER;
DEB WIEKER; and
RICK WIEKER,

      Plaintiff(s),

v.

MESA COUNTY VALLEY SCHOOL DISTRICT #51,

      Defendant(s).

---

**ORDER**

---

I.    <u>INTRODUCTION AND BACKGROUND</u>

THIS MATTER is before the Court on cross motions for summary judgment.

Defendant Mesa County School District No. 51 (the "District"), filed a Motion for

Summary Judgment on May 30, 2006 (docket #44).  Plaintiffs filed a Motion for

Summary Judgment on July 14, 2006 (docket #53).  Both motions have been fully

briefed.  Oral argument was held on December 6, 2006.

Plaintiffs initiated this suit on May 2, 2005, seeking damages and injunctive

relief, in connection with Grand Junction High School's ("GJHS") decision to "cut"

Plaintiff Jessica Wieker from the GJHS volleyball team in her senior year.   Plaintiffs

assert  claims for discrimination on the basis of sex in violation of Title IX of the

Education Amendments of 1972, 20 U.S.C. §§ 1681-88 ("Title IX"); liability under the

Age Discrimination Act of 1975, 42 U.S.C. §§ 6101-6107 (the "Act"); violation of

Fourteenth Amendment equal protection rights under 42 U.S.C. § 1983; and a claim for retaliation for exercise of First Amendment rights.  Defendant has moved for summary judgment on all of Plaintiffs' claims.  Plaintiff Jessica Wieker (hereafter "Wieker") cross-moves for summary judgment only as to her first claim for violation of Title IX.

Several material facts are undisputed.  GJHS is a public high school within the District that receives federal funds.  GJHS provides a number of interscholastic opportunities for both girls and boys; one of the opportunities provided to girls is volleyball.  At GJHS, there are three volleyball teams for girls: freshman, junior varsity and varsity.  Wieker attended GJHS from the Fall of 2001 to the Spring of 2005 when she graduated.  While attending GJHS, Wieker participated on the sub-varsity volleyball teams (the freshman team her freshman year and the junior varsity team her sophomore and junior years).  She also participated on the girls' junior varsity soccer team her freshman year, but was never on a varsity level team at GJHS.  In August 2004, when Wieker was a senior, she participated in try-outs for the GJHS volleyball team.  During this time, Coach Robert Korver was the head coach of the volleyball program and made the final decision about whom, and how many, would participate on his teams.  The District does not limit coaches' discretion about who is on the team and how many are on the team.  Coach Korver did not allow seniors to play junior varsity and limited participation on the freshman team for freshman.  Based on the result of the tryouts, Coach Korver selected twenty girls for his junior varsity and varsity teams.  Coach Korver ranked Wieker twenty-second, and she was not selected for the volleyball program.

II.    ANALYSIS

    A.    Summary Judgment Standard

Summary judgment may be granted where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and the ... moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c).  The burden of showing that no genuine issue of material fact exists is borne by the moving party.  *E.E.O.C. v. Horizon/CMS Healthcare Corp.*, 220 F.3d 1184, 1190 (10th Cir. 2000).  In reviewing a summary judgment motion, the court must view the evidence in the light most favorable to the nonmoving party.  *Anaya v. Crossroads Managed Care Systems, Inc.*, 195 F.3d 584 (10th Cir. 1999).  All doubts must be resolved in favor of the existence of triable issues of fact.  *Boren v. Southwestern Bell Tel. Co.*, 933 F.2d 891, 892 (10th Cir. 1991).

When cross motions for summary judgment are filed, the court "'is entitled to assume that no evidence needs to be considered other than that filed by the parties, but summary judgment is nevertheless inappropriate if disputes remain as to material facts.'"  *Atlantic Richfield Co. v. Farm Credit Bank of Wichita*, 226 F.3d 1138, 1148 (10th Cir. 2000) (quotation omitted).  Cross motions for summary judgment must be treated separately; the denial of one does not require the grant of another.  *Buell Cabinet v. Sudduth*, 608 F.2d 431, 433 (10th Cir. 1979).

    B.    Whether Summary Judgment is Appropriate In this Case

        1.    Title IX Claim

Title IX provides that "[n]o person in the United States shall, on the basis of sex,

be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance." 20 U.S.C. § 1681.  Regulations interpreting the application of Title IX to athletic programs became effective on July 21, 1975.  These regulations require that "a recipient which operates or sponsors interscholastic, intercollegiate, club or intramural athletics shall provide equal opportunity for members of both sexes." 34 C.F.R. § 106.41(c).  A Policy Interpretation, issued in 1979, has further developed the meaning of "equal opportunity" in interscholastic athletics, and explains the factors and standards the Department of Education will consider in determining whether an institution's athletics program complies with the law and governing regulations.  44 Fed.Reg. 71413.  This Policy Interpretation explores three areas of compliance: (1) Athletic Financial Assistance; (2) Equivalence in Other Athletic Benefits and Opportunities; and (3) Effective Accommodation of Student Interests and Abilities.  34 C.F.R. §§ 106.37(c); 106.41(c)(1)-(10); 44 Fed. Reg. at 71414.  Here, Wieker's Title IX claim is based on  ineffective accommodation of her interests and abilities.  Complaint at ¶¶ 11-20; Wieker Mtn for Sum. J. at 8.

a.   <u>Standing</u>

The District first contends that summary judgment should enter in their favor on Wieker's Title IX Claim because Wieker lacks standing.  The Supreme Court has stated a three part test for standing. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992).  "First, the plaintiff must have suffered an 'injury in fact' -- an invasion of a legally protected interest which is (a) concrete and particularized, ... and (b) 'actual or

imminent, not conjectural or hypothetical....'" *Lujan*, 504 U.S. at 560 (quotations omitted).  "Second, there must be a causal connection between the injury and the conduct complained of -- the injury has to be 'fairly ... trace[able] to the challenged action of the defendant, and not ... th[e] result [of] the independent action of some third party not before the court.'" *Id.*  "Third, it must be 'likely,' as opposed to merely 'speculative,' that the injury will be 'redressed by a favorable decision.'"  *Id.* at 561. "The party invoking federal jurisdiction bears the burden of establishing these elements."  *Id.*

"Since they are not mere pleading requirements but rather an indispensable part of the plaintiff's case, each element must be supported in the same way as any other matter on which the plaintiff bears the burden of proof, i.e., with the manner and degree of evidence required at the successive stages of the litigation."  *Id.*  "At the pleading stage, general factual allegations of injury resulting from the defendant's conduct may suffice, for on a motion to dismiss we 'presum[e] that general allegations embrace those specific facts that are necessary to support the claim.'" *Id.* (quotation omitted). "In response to a summary judgment motion, however, the plaintiff can no longer rest on such 'mere allegations,' but must 'set forth' by affidavit or other evidence 'specific facts,' ... which for purposes of the summary judgment will be taken to be true."  *Id.* "And at the final stage, those facts (if controverted) must be 'supported adequately by the evidence adduced at trial.'"  *Id.*

Here, the District asserts that Wieker lacks standing to challenge any alleged ineffective accommodation because she has not shown that she was denied the

opportunity to participate in volleyball at GJHS.  According to the District, the key inquiry is not whether Wieker ultimately participated in volleyball, but whether she was given an "opportunity" to participate.  The District contends that Wieker took advantage of her opportunity to participate in volleyball by going through the try-out process, even though she was not allowed to participate.  I disagree.  Wieker's Title IX claim challenges the participation opportunities available to girls at GJHS.  According to Wieker, "girls are often cut from sports despite their underrepresented status even when certain boys sports have no cuts."  The "injury" Wieker alleges is that by failing to provide additional opportunities to participate in volleyball, beyond the limited number of spots available on the varsity team, GJHS ineffectively accommodated the interests and abilities of female athletes at GJHS.  *See* 44 Fed. Reg. 71,418.  Therefore, I find that Wieker has alleged an "injury-in-fact" with respect to her ineffective accommodation claim.

The District next asserts that even if Wieker could establish "injury" she cannot establish that the District caused her injuries because Coach Korver, not the District, made the ultimate decision regarding which players were selected for the volleyball team.  However, it is clear that when a school districts delegates to a coach the authority to make final decisions, it can be liable for the actions of that coach.  *See Seamons v. Snow*, 206 F.3d 1021, 1029 (10th Cir. 2000).  I find that Wieker can establish a connection between the injuries she suffered and the actions of the District.

I also reject the District's contention that Wieker cannot establish a likelihood that her injury can be "redressed by a favorable decision."  The District argues that

because Wieker has graduated from GJHS she cannot show that she is likely to suffer future injury from the alleged "ineffective accommodation." Standing to seek injunctive relief is dependent on whether a plaintiff is "likely to suffer future injury from the type of sex discrimination alleged" in the complaint. *See Simpson v. Univ. of Colo.*, 372 F.Supp. 2d 1229, 1245 (D. Colo. 2005). Wieker concedes that she is not entitled to pursue injunctive relief.[1] However, she can still pursue a damages remedy in connection with her Title IX claim, even if such damages are nominal. *See Franklin v. Gwinnett County Pub. Schs.*, 503 U.S. 60, 76 (1992) ("a damages remedy is available for an action brought to enforce Title IX."). Therefore, Wieker can establish that the injury she alleges can be redressed by a decision in her favor, and has standing to pursue her Title IX claim for ineffective accommodation.

The District also contends that Wieker lacks standing to pursue her "unequal treatment" claim under Title IX. In her motion for summary judgment, Wieker repeatedly characterizes her Title IX claim in terms of "ineffective accommodation," and her arguments therein focus solely on application of the legal standard relevant to assessing compliance in the area of accommodation. *See* Wieker Motion at 8. In addition, the Final Pretrial Order discusses Wieker's Title IX claim in the context of ineffective accommodation and does not discuss a claim of "unequal treatment and benefits." Nevertheless, at the December 6, 2006, hearing, Wieker asserted that she is pursuing both an accommodation claim and an unequal treatment claim. I find that

---

[1]Plaintiff stated at the hearing and in her Response Brief that she is no longer pursuing a claim for injunctive relief. *See* Wieker's Response at 15 stating "[A]s to the District's position regarding injunctive relief, Jessica concedes this point."

even if Wieker has adequately pled an unequal treatment claim, and even if she has standing to bring such a claim, the District would be entitled to summary judgment in its favor.  In its motion for summary judgment the District asserts that Wieker cannot establish a "program wide" Title IX violation at GJHS in the area of unequal treatment.[2] In response, Wieker merely refers the Court to the arguments and authorities set forth in her cross-motion.  However, those arguments and authorities relate exclusively to whether the District violated Title IX in the area of accommodation, and do not address unequal treatment.  Because Wieker has failed to come forward with sufficient evidence to demonstrate the essential elements of her unequal treatment claim at the summary judgment phase, I find that the District is entitle to judgment on this aspect of Wieker's Title IX claim as a matter of law.  *Celotex Corp. v. Catrett*, 477 U.S. at 322-23.

b.   Whether Wieker Has Demonstrated Ineffective Accommodation

Both Wieker and the District have moved for summary judgment on Wieker's claim that the District failed to accommodate her interests and abilities in violation of Title IX.  The Office of Civil Rights in the Department of Education is the regulatory body charged with federal enforcement of Title IX.  The OCR has adopted a three-part test to assess effective accommodation with respect to opportunities for intercollegiate

---

[2] Compliance in the area of equal treatment and benefits is assessed based on an overall comparison of the male and female athletic programs, including an analysis of selection of sports, provision of equipment, scheduling of games, travel and per diem allowance, opportunity to receive coaching and academic tutoring, compensation of coaches and tutors, provision of locker rooms and other facilities and services, and publicity. *Pederson v. Louisiana State University*, 213 F.3d 858, 865 (5th Cir. 2000); 34 C.F.R. § 106.41(c); *Cohen*, 991 F.2d at 897.

competition.  Courts, including the Tenth Circuit, have adopted this test in evaluating

ineffective accommodation claims, and both parties agree that this test should be

utilized in assessing Wieker's accommodation claim in this case.   Effective

accommodation of students interests and abilities is established where an institution

complies with one of the following three benchmarks:

> (1) Whether intercollegiate level participation opportunities
> for male and female students are provided in numbers
> substantially proportionate to their respective enrollments; or
>
> (2) Where the members of one sex have been and are
> underrepresented among intercollegiate athletes, whether
> the institution can show a history and continuing practice of
> program expansion which is demonstrably responsive to the
> developing interest and abilities of the members of that sex; or
>
> (3) Where the members of one sex are underrepresented
> among intercollegiate athletes, and the institution cannot
> show a continuing practice of program expansion such as
> that cited above, whether it can be demonstrated that the
> interests and abilities of the members of that sex have been
> fully and effectively accommodated by the present program.

44 Fed. Reg. 71,418; *see also Roberts v. Colorado State Bd. of Agriculture*, 998 F.2d

824, 828-29 (10th Cir. 1993).  To succeed in her Title IX claim, Wieker "must not only

show that [the District] fails on the first benchmark of substantial proportionality but also

that it does not fully and effectively accommodate the interests and abilities of its

women athletes." *Roberts*, 998 F.2d at 831.  The District contends that even if Wieker

can prove that it has not complied with the first two benchmarks, she cannot make the

requisite showing under the third benchmark.  In her cross-motion, Wieker contends

she has met her burden with respect to all three benchmarks.

The first benchmark of "substantial proportionality" between athletic participation

and undergraduate enrollment "provides a safe harbor for recipients under Title IX." *Id.* at 829. "There is no set ratio that constitutes 'substantially proportionate' or that, when not met, results in a disparity or a violation." *Id.* at 829-30 (quoting OCR's Investigator's Manual at 24.). However, substantial proportionality requires a "fairly close relationship" between participation and enrollment. *Id.* In *Roberts*, the Tenth Circuit found that a 10.5% disparity between female athletic participation and female undergraduate enrollment at Colorado State University is not substantially proportionate. *Id.* at 830. The Court noted that "[the fact that many or even most other educational institutions have a greater imbalance than CSU does not require a different holding." *Id.*

Here, Wieker contends that substantial proportionality does not exist at GJHS. Wieker has demonstrated that in the 2004-05 school year, girls accounted for 52.1% of the total enrollment at GJHS, while only accounting for 41.7% of the total athletic participants - a discrepancy of 10.4%. In the 2003-04 school year, the discrepancy was 6.1%; it was 7% in the 2002-03 school year, and 8.2% during the 2001-02 school year. At the hearing, the District disputed the numbers and methodology supporting Wieker's proportionality argument. The District also contends that the disparities asserted by Wieker do not establish substantial disproportionality, and note that on average the disparities at issue are significantly lower than the disparities found in other Title IX cases involving larger college athletic programs. The district further contends that the highest disparity in the 2004-05 year "appears to be an anomalous fluctuation as compared to the downward trend evident in the prior years."

As an initial matter, I reject the District's challenge to the accuracy of the proportionality analysis presented by Wieker in her briefs and at the hearing. The evidence presented by Wieker was generated using the proportionality surveys provided by the District in response to Wieker's discovery requests. The surveys are generated by the Colorado High School Activities Association and completed by individuals at the GJHS athletic department. The District did not perform its own proportionality analysis nor did it present any additional data or different calculations concerning levels of participation that would contradict Wieker's calculations, other than to state that the numbers for female athletic participants fail to account for spirit teams such as cheerleading and pom pom squads. However, the District offers no authority for counting participants in spirit teams as part of the total number of athletic participants in assessing proportionality under Title IX. Therefore, I will accept Wieker's data for purposes of ruling on the motions for summary judgment. While, the issue of substantially proportionality is a close call in this case, I find that Wieker has shown that the District failed to maintain substantial proportionality between male and female athletic participation at GJHS.

However, even if a Title IX recipient fails to maintain substantial proportionality, it can maintain compliance with Title IX if it has "expanded and is continuing to expand opportunities for athletic participation by the underrepresented gender," or if it has "fully and effectively accommodate[d] the interests and abilities among members of the underrepresented gender." *Roberts*, 998 F.2d at 829. As to the "expansion" benchmark, Wieker contends that "there is no continuing practice of program

expansion which is demonstrably responsive to the developing interest and abilities of girls." The District contends that "factual issues" preclude summary judgment against it as to this issue. The District notes that in 1998, it added a freshman softball team for girls, and effective for the 2005-06 school year, GJHS discontinued its boys' varsity swim team. The parties offer little authority regarding what is required to demonstrate ongoing expansion. However, I have serious doubts as to whether the District can demonstrate "continued expansion" of opportunities for female athletes based solely on the addition of a single girls softball team in 1998. Moreover, Wieker presented evidence that the District's athletic director, Steve Phillips, testified that there has not been any discussion regarding the addition of any girls sports teams in the past two years. Contrary to the District's assertion, no material facts appear to be in dispute with regard to "expansion." Based on the record before me, I conclude that the District has not established ongoing expansion sufficient to bring it into compliance with Title IX, particularly where the disparity between female participation in athletics and the total percentage of female students has increased in recent years. Compliance with the second-prong contemplates circumstances under which an institution falls short of substantial proportionality, but nevertheless is "continually expanding athletic opportunities in an ongoing effort to meet the needs of the underrepresented gender." *Cohen v. Brown University*, 991 F.2d 888, 898 (1st Cir. 1993). Here, there is simply no evidence of continual expansion of opportunities for female athletes to participate at GJHS. Therefore, I find that the District has failed to meet the second benchmark.

As to the third benchmark, Wieker must show that the interests and abilities of

the members of the underrepresented sex have not been fully and effectively accommodated by the present athletic program. *See Roberts*, 998 F.2d at 831 ("[b]ecause a Title IX violation may not be predicated solely on a disparity between the gender composition of an institution's athletic program and the gender composition of its undergraduate enrollment, plaintiff must not only show that the institution fails on the first benchmark of substantial proportionality but also that it does not fully and effectively accommodate the interests and abilities of its women athletes."). The third-prong requires "not merely some accommodation, but full and effective accommodation." *Cohen*, 991 F.2d at 898. "If there is sufficient interest and ability among members of the statistically underrepresented gender, not slaked by existing programs, an institution necessarily fails this prong of the test." *Id*. However, "the mere fact that there are some female students interested in a sport does not *ipso facto* require the school to provide a varsity team in order to comply with the third benchmark. Rather the institution can satisfy the third benchmark by ensuring participatory opportunities . . . when, and to the extent that, there is 'sufficient interest and ability among the members of the excluded sex to sustain a viable team and a reasonable expectation of intercollegiate competition for that team . . ..'" *Id*. (quoting 44 Fed.Reg. at 71,418). Title IX does not require an institution to create a new team unless there is interest, ability, and a reasonable expectation of competition for that team. *Id*.; *Roberts*, 998 F.2d at 831; *Horner v. Kentucky High Sch. Athletic Assn.*, 43 F.3d 265, 275 n. 9 (6th Cir. 1994).

It is Wieker's assertion that the District did not offer her a sufficient opportunity

to participate in athletics.  Wieker states in her Response to the District's motion that "Jessica has suffered an injury in fact by not being given the same participation opportunity that the District gives to boy athletes; she was cut [from the volleyball team] because [sic] due to the fact that the District offers fewer athletic opportunities to girls." Plaintiffs' Rsp. at 7.  There is no evidence in the record before me that Wieker was denied an opportunity to participate in any athletic team at GJHS other than the varsity volleyball team during her senior year.  Therefore, to establish the third benchmark, Wieker must show that the District failed to accommodate her interest and ability to participate on the volleyball team her senior year.

Wieker complains that the District failed to accommodate her when it failed to respond to a petition from her and her teammates to add a fourth volleyball team. Wieker further asserts that the District regularly cuts female athletes while not cutting male athletes.  Specifically, Wieker presents evidence that the District cut 21 out of 56 (37.5%) girls who tried out for volleyball in 2005; 19 out of 50 (38%) girls who tried out in 2004; 10 out of 48 (20.8%) girls who tried out in 2003; 19 out of 55 (34.2%) girls who tried out in 2002; 14 out of 49 (28.6%) girls who tried out in 2001; and 16 out of 47 (34%) girls who tried out in 2000.  According to Wieker, these cuts were made despite the fact that she signed a petition to add a fourth volleyball team and at a time when GJHS boys teams, such as football, soccer and tennis did not make any cuts.

The District does not dispute that it never conducted formal, interest surveys among students at GJHS, but states that it never received a "petition" for a fourth volleyball team, and that Wieker is the only female athlete before the Court expressing

-14-

interest in a fourth volleyball team.  In addition, the District asserts that even if Wieker could establish "interest and ability" to form a fourth volleyball team, there is no reasonable expectation of competition for such a team.  According to the District, "there are currently no fourth volleyball teams to play in the District's league, or anywhere else in its geographic region."[3]

As discussed above, when cross motions for summary judgment are filed, the court "'is entitled to assume that no evidence needs to be considered other than that filed by the parties, but summary judgment is nevertheless inappropriate if disputes remain as to material facts.'"  *Atlantic Richfield Co. v. Farm Credit Bank of Wichita*, 226 F.3d 1138, 1148 (10th Cir. 2000) (quotation omitted).  While there are issues of fact in dispute regarding the District's efforts to assess student athlete's interests and abilities, I find that such disputes are not material to the issue of accommodation, as Title IX does not require the District to conduct formal interest surveys.  In addition, Wieker's evidence that the District does not "cut" players in certain boys sports, while relevant to assessing the aggregate number of boys and girls participating in athletics at GJHS, is not relevant to the issue of whether the district fully and effectively accommodated the interests and abilities of female athletes.

The only evidence on the record of unmet interest and ability in this case is (1) Wieker's affidavit in which she states that "[i]n my sophomore year (during the fall of

---

[3]At the hearing, Wieker conceded that there are no "fourth" volleyball teams within the District, but notes that several schools in the Denver Metropolitan area that currently  compete against GJHS in other sports such at football, have a forth volleyball team.

2002), my volleyball teammates and I believed that there was more interest in volleyball than what was then accommodated by the school.  For this reason, we signed a petition asking the District to add a fourth volleyball team," and (2) the information submitted by Wieker concerning the percentage of female athletes who tried out for the volleyball team and were cut from the years 2000 through 2005.

"[The plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322.  "In such a situation, there can be 'no genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Id.* at 322-23.  The moving party is 'entitled to a judgment as a matter of law' because the nonmoving party has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof." *Id.* at 323.

I find that Wieker has failed to make a sufficient showing that the District failed to accommodate her interests and abilities.  While Wieker's affidavit is evidence of her interest in participating in a fourth volleyball team during her sophomore year, it is clear that the District is not required to create an additional team to accommodate the interests and abilities of one player unless there is "sufficient interest and ability among the members of the excluded sex to sustain a viable team . . . ." *Cohen*, 991 F.2d at 898 (quoting 44 Fed.Reg. at 71,418).  While data showing that in the years 2000

through 2005 a number of female athletes were cut from the volleyball team is evidence of strong interest among female athletes in competing for spots on existing volleyball teams, it does not necessarily follow that the women who were cut from the volleyball team are interested in participating on a competitive sub-varsity volleyball team, nor does it follow that the women cut from the volleyball team have the athletic ability to form a competitive sub-varsity volleyball team.   Wieker does not present any evidence indicating that any other female athletes were interested and able to participate in a fourth volleyball team during her senior year.   Therefore, I find that the evidence on the record before me is simply insufficient to sustain Wieker's burden of proving ineffective accommodation.   *Compare Roberts*, 998 F.2d at 831 (discussing the court's ability to make extensive findings concerning unmet abilities and interests of the plaintiff softball players, and the feasibility of their organizing a competitive season of play).

I find that the District is entitled summary judgment in its favor on Wieker's Title IX claim.   Thus, I need not address the District's final argument that it is not liable for money damages in connection with Wieker's Title IX claim because it did not receive "actual notice" of the alleged discrimination as required by the Supreme Court in *Gebser v. Lago Vista Indep. Sch. Dist.*, 524 U.S. 274 (1998).

## 2.   Age Discrimination Claim

I now turn to the District's remaining arguments.   The Age Discrimination Act "prohibit[s] discrimination on the basis of age in programs or activities receiving Federal financial assistance."   42 U.S.C. § 6101.   The District contends that it is entitled to summary judgment on Wieker's age discrimination claim because, even if the Act

authorizes a private right of action for money damages, Wieker failed to comply with the jurisdictional prerequisites from bringing this claim and because "there is absolutely no evidence that she was cut from the volleyball team because of her age."

The section in the Act concerning "enforcement" states, in relevant part that:

> When any interested person brings an action in any United States district court for the district in which the defendant is found or transacts business to enjoin a violation of this Act by any program or activity receiving Federal financial assistance, such interested person shall give notice by registered mail not less than 30 days prior to the commencement of that action to the Secretary of Health and Human Services, the Attorney General of the United States, and the person against whom the action is directed. . . .

42 U.S.C. § 6104(e)(1).  A federal court lacks subject matter jurisdiction over a suit brought pursuant to the Act if this prerequisite is not met.  *Curto v. Smith*, 248 F.Supp.2d 132, 145 (N.D.N.Y. 2003).  Wieker does not dispute that she failed to give the required notice, but contends that because she seeks monetary rather than injunctive relief, the requirements of section 6104(e)(1) do not apply.

As an initial matter, I question whether the Act provides a private right of action for monetary damages in the first instance.  Private rights of action to enforce federal law must be created by Congress.  *Alexander v. Sandoval*, 532 U.S. 275, 286 (2001). In determining whether a private right of action exists within a federal statute that does not expressly provide for one, I focus solely on Congressional intent underlying the particular statute at issue.  *Boswell v. Skywest Airlines, Inc.*, 361 F.3d 1263, 1267 (10th Cir. 2004) (citing *Transamerica Mortgage Advisors v. Lewis*, 444 U.S. 11, 15-16 (1979); *Alexander*, 532 U.S. at 286-87.  I must determine whether Congress intended to create

not only a private right in favor of Plaintiffs, but also a private remedy. *Sandoval*, 532 U.S. at 286. In the absence of statutory intent to create a private remedy, a cause of action does not exist, and I may not create one "no matter how desirable that might be as a policy matter, or how compatible with the statute." *Sandoval*, 532 U.S. at 286-87. In determining Congressional intent under this standard I examine the statutes at issue for "rights creating language" which "explicitly confer[s] a right directly on a class of persons that include[s] the plaintiff[s]," and consider the relation between the provision at issue and the overall statutory scheme. *Boswell*, 361 F.3d at 1267 (quoting *Cannon v. Univ. of Chicago*, 441 U.S. 677, 690 n. 13 (1979)).

Here, the only provision in the Act that expressly speaks to a private right of action is section 6104(e)(1), which specifically refers to actions to injunctive relief accompanied by attorney's fees, but is silent on the issue of money damages. *See Giuffrai v. Louisiana State University*, 2006 WL 120086 (E.D. La., Jan. 6, 2006). I find no evidence in the Act of Congressional intent to create a private remedy for damages. Moreover, even if such a remedy were encompassed in private right of action set for in section 6104, it is undisputed that Wieker did not comply with the jurisdictional prerequisites set forth in that section. Therefore, I find that the District is entitled to summary judgment in its favor on Plaintiffs' Second Claim For Relief under the Age Discrimination Act.

        3.   Equal Protection Claim

During the December 6, 2006, hearing, Plaintiff agreed to withdraw this claim. Therefore, I find that the District is entitled to summary judgment in its favor on

Plaintiffs' Equal Protection Claim.

### 4.   First Amendment Claim

Finally, the District asserts that it is entitled to summary judgment on Plaintiffs' First Amendment retaliation claim.  Plaintiffs contend that they made numerous complaints to the District and that because of these complaints, Plaintiff Jessica Wieker was cut from the volleyball team, and Plaintiff Deb Wieker "felt that she could not come forward with a complaint to the District as to the District's policy of not allowing students who graduate early from attending prom." The District contends that Plaintiffs did not engage in any expressive activity regarding matters of public concern.  The District also asserts that Plaintiffs Deb and Rick Wieker suffered no "speech-chilling injury."  Finally the District contends that even if Plaintiffs could sustain a viable retaliation claim against Coach Korver in connection with his decision to "cut" Jessica Wieker from the volleyball team, they "cannot establish that *the District* is liable for his actions."

In order to establish their First Amendment retaliation claim, Plaintiffs must show (1) that they engaged in constitutionally protected activity; (2) that the Defendant's retaliatory actions caused them to "suffer an injury that would chill a person of ordinary firmness from continuing to engage in that activity;" and (3) that the Defendant's retaliatory action was substantially motivated as a response to the plaintiffs' exercise of constitutionally protected conduct.  *Worrell v. Henry*, 219 F3d 1197, 1212 (10th Cir. 2002).

Plaintiffs concede that they made many complaints to the District that were of a personal nature, but specifically state that Plaintiff Deb Wieker made numerous

complaints about "girls getting cut as a whole over boys" from 2001 or 2002 until 2005.

I find that Plaintiff Deb Wieker's complaints about discrimination under Title IX are

matters of public concern sufficient to support a claim for violation of the First

Amendment. *See Clay v. Bd. of Trustees of Neosho County Community College*, 905

F.Supp. 1488 (D. Kan. 1995).  However, I agree with Defendant that Plaintiffs have

failed to demonstrate the existence of a "speech chilling injury."  Plaintiff Deb Wieker

does not allege any retaliatory conduct by Defendant that was directed at her, and her

contention that she felt that she could not come forward with a complaint regarding the

District's prom policy is speculative and insufficient to satisfy the requirement of

"speech chilling injury."  Moreover, the District's decision to cut Plaintiff Jessica Wieker

from the volleyball team is insufficient to support a violation of the individually held First

Amendment rights of Plaintiff Deb Wieker.  *See Seamons v. Snow*, 84 F.3d 1226, 1237

(10th Cir. 1996).  Finally, Plaintiffs have not demonstrated any constitutionally

protected activity on the part of Plaintiffs Jessica and Rick Wieker.  Therefore, I find

that the District is entitled to summary judgment in its favor on Plaintiffs' First

Amendment Retaliation Claim.

III.    <u>CONCLUSION</u>

        In conclusion, for the reasons stated herein, it is hereby

        ORDERED that Defendant Mesa County School District No. 51 (the "District"),

filed a Motion for Summary Judgment, filed on May 30, 2006 (docket #44), is

**GRANTED**, and the claims set forth in the Complaint are dismissed.  It is

        FURTHER ORDERED that Plaintiffs' Motion for Summary Judgment, filed on

July 14, 2006 (docket #53) is **DENIED**.

Dated:  February 21, 2007

BY THE COURT:

s/ Wiley Y. Daniel
Wiley Y. Daniel
U. S. District Judge